# EXHIBIT A

Return Date: No return date scheduled
Hearing Date: No hearing scheduled
Courtroom Number: No hearing scheduled
Location: No hearing scheduled

6-Person Jury

Case: 1:20-cv-05799 Document #: 1-1 Filed: 09/29/20 Page 2 of 10 PageID #:9

FILED
9/1/2020 2:54 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2020L009359

FILED DATE: 9/1/2020 2:54 PM   2020L009359

# IN THE CIRCUIT COURT OF THE FIRST JUDICIAL CIRCUIT
## COOK COUNTY, ILLINOIS, LAW DIVISION

JAVIER VAZQUEZ, )
and all others similarly situated, )
) 10306683
Plaintiffs, )
)
vs. ) Gen. No.: _____
)
UNUM LIFE INSURANCE COMPANY )
OF AMERICA, )
)
Defendant. )

## CLASS ACTION COMPLAINT

NOW COMES the Plaintiff, JAVIER VAZQUEZ, on behalf of himself, and all others similarly situated, by and through their attorneys, THE DWYER LAW OFFICE, and for its complaint against the UNUM LIFE INSURANCE COMPANY OF AMERICA, states as follows:

### COUNT I – DECLARATORY JUDGMENT-VOID CONTRACT

1. Plaintiff Javier Vazquez is a resident of Illinois.

2. Defendant Unum Life Insurance Company of America ("Unum") is a company doing business in the State of Illinois.

3. Prior to becoming disabled, Plaintiff was employed by St. Francis Hospital, also known as OBF Health Care ("the Hospital").

4. Defendant Unum contracted with the Hospital to provide long-term disability to the employees of the Hospital.

5. Plaintiff Javier Vazquez was an employee of the Hospital, and Plaintiff opted to pay for the long-term disability coverage.

- 1 -

6. During the course of his employment at the Hospital, Plaintiff Vazquez did become ill, and was diagnosed with prostate cancer.

7. Plaintiff made a claim for disability, and was accepted as disabled by Unum.

8. Unum disability definition was almost identical-in-substance to that of the Social Security Administration ("SSA"); however, the definition employed by Unum was a little more restrictive.

9. When Unum had adjudicated Plaintiff to be "disabled", it hired a third party vendor to apply for, and obtain disability status with the SSA.

10. Plaintiff was in fact granted disability status by the SSA and obtained retroactive benefits with respect to his disability status.

11. As such, Plaintiff received a check from SSA, for which Unum demanded a substantial rebate of the benefits paid.

12. In doing so, Unum set up a contractual relationship with no consideration, and the "benefits" paid by Unum to Plaintiff were risk-free.

13. That is, under the contract, Unum was assured that if Plaintiff was disabled, then Plaintiff would be eligible for retroactive SSA benefits.

14. At all times relevant hereto, Plaintiff was an intended third party beneficiary to the contract between Unum and OSF.

15. OSF contracted with Unum in order to confer a benefit to its employee, such as Plaintiff, and all others similarly situated, were the intended beneficiaries.

16. Plaintiff paid directly to Unum to be covered under the disability policy.

- 2 -

17. Only Unum had no risk; Defendant would pay the disability payments up front, virtually insured to be compensated later, knowing full well that any employee meeting the definition of "disabled" under Unum would also meet that definition under the SSA.

18. As such, there was no consideration for the contract.

19. Now that Plaintiff was adjudicated disabled from the SSA, Unum has demanded reimbursement of its disability benefit payments from Plaintiff. See Exhibit A hereto.

20. In order to have a valid contract, there must be an offer; acceptance; (c) consideration; and a meeting of the minds.

21. Plaintiff, an employee of OSF, contracted for disability insurance.

22. Defendant Unum provided disability insurance without any risk, knowing full well that its risk was essentially zero as its definition largely mimicked the disability definition of SSA.

23. Having a definition tied to a vested right for disability payments under the government (SSA) system, Unum was providing nothing to the Plaintiff.

24. Because there exists no consideration under the contract, the agreement remains unenforceable and Unum is not entitled to any reimbursement under the contract with Plaintiff.

25. There exist hundreds, if not thousands, of individuals in the State of Illinois who remain in the same position as Plaintiff regarding the policies and practices of Unum.

- 3 -

26. Plaintiff is an adequate class representative for potential class members.

27. As a direct result of the lack of consideration, the contract is null and void.

WHEREFORE, Plaintiff, JAVIER VAZQUEZ, by his attorney, THE DWYER LAW OFFICE, prays that this Court enter a judgment declaring that there is a lack of consideration and no valid contract in the case *sub judice*, declare that Defendant UNUM is legally unable to collect any funds from Plaintiff, or those similarly situated, and issue whatever further relief this Court deems just and appropriate.

### COUNT II – CONSUMER FRAUD

28. Plaintiff repeats and realleges paragraphs 1-27 of Count I as if fully realleged and restated as paragraph 28 of this Count II.

29. At all times relevant hereto, there exists the Illinois Consumer Fraud and Deceptive Practices Act.

30. The relevant portion of that statute states:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.

815 ILCS 505/2.

31. Plaintiff is a "consumer" for purposes of the Act.

- 4 -

32. Under the Act, Defendant is a "seller", and the transaction at bar is a "sale".

33. The Defendant engaged in deceptive practices under its policies.

34. Initially, the Defendant contracted to cover disability for the employees of OSF, in the event the employees paid the insurance premiums.

35. Plaintiff opted to pay for the disability coverage.

36. Unum set up a system where its coverage was virtually "identical-in-substance" with SSA, thereby insuring that any employee who was "disabled" under Unum's policy would in fact be disabled under the government's SSA program.

37. In that regard, any employee of OSF which qualified for disability coverage from Unum would also qualify for disability under SSA.

38. As such, Unum adopted a policy where it pays the employee the benefits, uses a third party vendor to obtain SSA benefits for employees who became disabled, such as Plaintiff, and then demands reimbursement from Plaintiffs of the monies paid once SSA had granted retroactive benefits.

39. The definition of "disabled" under the Unum policy, however, was a little more restrictive than that used by SSA, so that once an employee was deemed disabled by the SSA, Unum would demand proof that the employee was still disabled under the more restrictive Unum policy.

40. At the same time, Unum, a multibillion dollar company, would demand retroactive payment from the employee, such as Plaintiff.

41. As a general matter, Plaintiffs have no recourse but to abide by the predatory Unum policy.

42. These practices listed herein remain illegal, deceptive and predatory under the Illinois Consumer Fraud Act.

43. Plaintiff, and all others similarly situated, have suffered injuries as a direct and proximate result of the policies undertaken by Unum.

44. That Act requires violators, such as the Defendants herein, to reimburse Plaintiff for all reasonable attorney's fees and costs.

45. Pursuant to 735 ILCS 5/2-801, Plaintiff brings this action on behalf of himself and the members of the following proposed class:

> All persons who were residents and citizens of the State of Illinois who purchased insurance policies underwritten by Unum Insurance Company of America during the last ten years and whose credit or debit cards were charged by Defendants when such charge was not authorized by the Plaintiff or members of the putative class.

46. Members of the proposed Class are so numerous that the individual joinder of all absent Class members is impracticable. While the exact number of Class Members is unknown to Plaintiff at this time, it is believed to be in excess of 1,000 or more and is easily ascertainable by appropriate discovery because Defendants are in possession of detailed records identifying each and every person to whom the Defendant provided insurance policies where the illegal policies were implemented.

47. There are questions of law or fact common to the members of the Class and such common questions predominate over questions affecting individual members.

48. Plaintiff's claims are typical of the claims of the Class. Plaintiff and all members of the proposed Class have suffered damages as a result of the Defendant's common conduct with respect to the illegal policies instituted by the Defendants upon each member of the proposed Class.

49. Plaintiff will fairly and adequately protect the interest of the proposed Class. Plaintiff has no interest adverse to the interest of the members of the proposed Class. Plaintiffs have retained counsel who has experience in prosecuting and defending complex litigation.

50. The questions of law and of fact common to members of the proposed Class predominate over any individual questions affecting only individual Class members. The issues of fact and law applicable to the Class are identical to the issues of fact and law applicable to each individual member of the proposed Class.

51. A Class action is an appropriate method for the fair and efficient adjudication of this controversy and a Class action treatment is superior to the alternatives. There is no special interest in the members of the Class individually controlling the prosecution of separate actions. The damages sustained by individual Class members will not be large enough to justify individual actions, especially in proportion to the tremendous costs and expenses necessary to prosecute this action. The expense and the burden of individual litigation make it impossible for members of the Class individually to address the wrongs done to them. Class treatment will permit the adjudication of claims of Class members who could not afford individually to litigate their claims against Defendants. Class treatment will permit a large number of similarly

situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the duplication of effort and expense that numerous actions would entail.

52. No difficulties are likely to be encountered in the management of this Class action that would preclude its maintenance as a Class action, and no superior alternative exists for the fair and efficient adjudication of this controversy. Furthermore, Defendants transact substantial business in Illinois and is located in Illinois. Defendants will not be prejudiced or inconvenienced by the maintenance of this Class action in this forum.

WHEREFORE, Plaintiff, JAVIER VAZQUEZ, prays that the Court consider the matters raised herein, find in favor of Plaintiff, declare that Defendant has violated the Illinois Consumer Fraud Act, award compensatory and consequential damages, award Plaintiff the costs and reasonable attorney's fees of presenting this claim and issue whatever further relief the Court deems just and equitable.

Respectfully submitted,

JAVIER VAZQUEZ

By: /s/ Timothy P. Dwyer

_____

One of his attorneys

FILED DATE: 9/1/2020 2:54 PM 2020L009359

Dwyer Law Office
One East Wacker Drive, Suite 2020
Chicago, IL 60601
Attorney No.: 06203199
Telephone: (312) 245-2700
Email: tim@tpd-law.com

- 9 -